## WEIL *v.* DRY-DOCK, E. B. &. B. R. Co.

(*Superior Court of New York City, General Term.* June 28, 1889.)

STREET RAILROADS—PERSONAL INJURIES.

Plaintiff, a child two years old, was taken by its mother to the father's store, lest the child should get burned on a hot stove at home, and the father was asked to watch it. The father soon stepped back to make entries in his books. He made three charges, and then missed the child, and immediately searched for it, and found that it had been run over and injured by a street-car. He testified that the child was out of his sight "10 or 15 minutes; I don't know;" and again, in answer to plaintiff's counsel, that "it was not ten minutes; not two minutes, I mean. I didn't think she was out at all, so quick it was." *Held,* that a complaint for the injuries was properly dismissed, as want of negligence by the parent was not shown. TRUAX, J., dissenting.

Appeal from jury term.

Action by Carrie Weil, an infant, by guardian, against the Dry-Dock, East Broadway & Battery Railroad Company, for personal injuries. The complaint was dismissed, and plaintiff appeals.

Argued before SEDGWICK, C. J., and TRUAX and DUGRO, JJ.

*Albert I. Sire* and *Chauncey Shaffer,* for appellant. *John M. Scribner,* for respondent.

SEDGWICK, C. J. The action was for damages from the negligence of a driver of defendants in managing a car, so that the leg of plaintiff was run over. The court below dismissed the complaint on the ground that the case did not show that the alleged negligence of defendant was the sole cause of the accident. The plaintiff was, at the time of the accident, a girl of less than two years of age, and therefore *non sui juris. McGarry* v. *Loomis,* 63 N. Y. 104; *Prendegast* v. *Railroad Co.,* 58 N. Y. 652; *Birkett* v. *Ice Co.,* 110 N. Y. 504, 18 N. E. Rep. 108. The testimony showed that her conduct contributed to the injury, and if she had been adult she would have had no action. By the law of this state, if her parents' negligence suffered her to go into the danger which ended in her injury, she has no action; and if on the trial it incontrovertibly appeared that there was such negligence, and the jury could not have found, properly, to the contrary, the dismissal of the complaint below was correct. There is no intention here of deciding whether or not, in the case of a plaintiff *non sui juris,* and therefore not capable of negligence, the plaintiff must prove that the parents or guardians were not negligent, or whether that is matter of defense. The plaintiff, as her mother testified, was scarcely able to talk, and could speak a few words only. About 4 in the afternoon, the child was with her mother in the kitchen. The mother was cooking, and was afraid the child would burn herself. She took the child by the hand into the store to the father, and said to him to be so kind and take some care of the child. The father testified that the mother asked him to watch the child a little. The store door was open. He played with her and talked with her a little. She ran behind a counter. He went to a desk, about 10 feet from the door, for the purpose of making entries in his account. When there, the child was not within his sight. She remained for some time behind the counter. The father for no other reason that appeared in evidence than that the child needed more attention than he was giving, looked around the counter for the child, and then in the bedroom, and then heard a noise in the street. He ran out, and saw that the child had been run over. The testimony given by the parents evinced that they knew that the child was so young, and so incapable of taking care of herself, that constant and particular care was needed to keep her from the street when, as the facts undoubtedly showed, it was dangerous to the child to suffer her to go. This is in one respect clearly shown by the alarm or anxiety of the father when he became conscious that the child was out of his sight, and his prompt and hurried

effort to find her. The mother would have kept her in a back room, if there had not been a danger to the child from the hot stove; and that she might do her duty to the child, when she took her into the outer room, she put her in care of the father, with the significant request of him. The father allowed the child to be out of his sight, so that he could not instantly restrain her, if necessary, for a certain length of time. He testified that she stayed out of his sight for "10 or 15 minutes; I don't know." He was afterwards asked, by plaintiff's counsel: "How long was it from the time you saw the child by your side until it was brought back to you?" He answered: "It was not ten minutes; not two minutes, I mean. I didn't think she was out at all, so quick it was. It happened so quick I did not think she was out at all." The mother testified that before the accident, or rather before the husband brought her the child, the child had been in the store "about 10 or 15 minutes." If the case had gone to the jury, and they had properly passed upon it, they could not have given a rendering to the father's testimony that would establish the fact that his withdrawal of his observation of the child was so momentary that it was not negligent. That would give credence to him when he said "It happened so quick I did not think she was out at all." This was, however, at variance with his testimony that she was out of his sight 10 or 15 minutes, or even 2 minutes, and his occupation in writing in his account three charges to customers, and also his action in searching for her. When he said the child was absent from his side "not ten minutes; not two minutes, I mean. I didn't think she was out at all, so quick it was,"—the first part being merely negative, and establishing nothing affirmative, the meaning of the whole is to be found in the latter part, with the implication that he could not categorically give the time. If it had simply appeared, on behalf of defendant, that a child of plaintiff's age, that needed positive restraint to keep her in safety, had gone into danger, when it also appeared that the use of ordinary means of restraint would have prevented her escape, the conclusion of law is that ordinary means were not used, and a jury could not conclude otherwise. The testimony that has been particularly examined shows that the plaintiff failed to overcome the presumption of law by proof of sufficient explanatory facts, for the attempted explanation was incoherent, and one part of it varied from the other. Indeed, if the extrinsic circumstances, and the indubitable inferences from them, were to be considered to give weight to one or the other branch of the contradiction, the result would be unfavorable to the plaintiff. My opinion is that the judgment should be affirmed, with costs.

TRUAX, J., (*dissenting.*) I cannot concur with the conclusion reached by my associates. There is no evidence tending to show any negligence on the part of the plaintiff, while there is evidence tending to show that the defendant was negligent, and therefore the negligence of the child's parents, even conceding that the child's parents were negligent, is immaterial. *Cumming* v. *Railroad Co.*, 104 N. Y. 669, 10 N. E. Rep. 855. The evidence offered by the plaintiff shows that the driver was extremely careless in the method in which he drove through this street. I am also of the opinion that the question of the parents' negligence should have been submitted to the jury. *Ames* v. *Railroad Co.*, 56 N. Y. Super. Ct. 3, 4 N. Y. Supp. 803; *Chrystal* v. *Railroad Co.*, 22 Wkly. Dig. 551. I do not see how we can hold, as matter of law, that it was negligence in the mother to let the child go out into the room where the father was; or that it was negligent for the father to take his eyes for a few moments from the child while it was with him in the house. I am of the opinion that the judgment should be reversed, and a new trial ordered, with costs to the appellant, to abide the event.